UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF | NUMBER |
| **SYLVESTER OUBRE, SR. AND LEANN OUBRE** | **17-12467** |
| | CHAPTER 13 |
| DEBTOR | SECTION "A" |
| **RIVER PARISH FINANCIAL SERVICES, LLC** PLAINTIFF | |
| VERSUS | SECTION "A" **17-1073** |
| **SYLVESTER OUBRE, SR. AND LEANN OUBRE** DEFENDANT | |

## **OPINION**

The Motion for Default Judgment in the above-captioned adversary proceeding came before the Court on February 8, 2018. At the conclusion of the hearing, River Parish was instructed to file a supplemental brief. After submission of the brief on February 19, 2018, the Court took the matter under advisement.

**I. Findings of Fact**

Sylvester and Leann Oubre ("Debtors") approached River Parish Financial Services, LLC ("River Parish") on February 6, 2017 requesting a loan of $2,500.00. River Parish required security, and Debtors offered as collateral their Pioneer Home Entertainment Equipment, Toshiba Rega 45", RCA 32" HDTV, Micro XBox, Nintendo Wii, and H&R 10GA Shotgun. Debtors completed and signed a loan application and promissory note on February 6, 2017 to obtain the loan.[1]

---

[1] Exh. A, Exh. B, and Exh. C.

On July 7, 2017, Debtors requested a second loan in the amount of $900.00. River Parish agreed but required additional collateral to secure its repayment. Debtors offered their Play Station 4, Springfield XD .45, and 60" Sharp Flat Screen TV as additional security.[2] On July 7, 2017, Debtors completed and signed the loan application and promissory note with River Parish.[3] For both loans, Debtors supplied the valuation of the collateral. River Parish failed to timely perfect its security interest for either loan.

Debtors filed a Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code on September 15, 2017. On November 1, 2017, Debtors attended their §341(a) Meeting of Creditors and testified under oath that their home had been robbed in November 2016. As a result of the robbery, their RCA 32" HDTV, Micro Xbox, Nintendo Wii, and Play Station 4 were stolen. Debtors further divulged that the 60" Sharp Flat Screen TV ceased to work over a year before filing, and the H&R 10GA Shotgun and Springfield XD .45 had been sold in May, 2017.

On November 29, 2017, River Parish filed the instant Adversary Complaint to Determine Dischargeability of Debt ("Complaint") pursuant to 11 U.S.C. § 523(a)(2)(A).[4] No answer was filed by Debtors in response to the Complaint. On January 4, 2018, River Parish filed a Motion for Clerk's Entry of Default.[5] On January 5, 2018, the Clerk entered a default against Debtors.[6] On January 10, 2018, River Parish filed a Motion for Default Judgment, which was set for hearing on

---

[2] Exh. G.

[3] Exh. D and Exh. E.

[4] P-1.

[5] P-5.

[6] P-7.

February 8, 2018.[7] Debtors did not appear for the Motion for Default Judgment.

## II. Law and Analysis

### A. 11 U.S.C. § 523(a)(2)(A)

River Parish avers that Debtors' obligations should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;...

For a creditor to succeed in having a debt excepted from discharge, the creditor must prove five elements: (1) debtor made a representation; (2) the representation was knowingly false; (3) the representation was made with the intention and purpose to deceive a creditor; (4) the creditor relied upon the representation; and (5) the creditor suffered a loss as a proximate result of the representations made by the debtor.[8] These elements must be satisfied by a preponderance of evidence.[9]

---

[7] P-9, P-11.

[8] *Matter of Selenberg*, 856 F.3d 393, 398 (5th Cir. 2017).

[9] *Id.*

Debtors requested two (2) loans from River Parish. In both instances, Debtors were required to offer collateral as security for the loans. Debtors elected to offer various personal goods, representing in each case that they owned the collateral and it remained in their possession. According to Debtors' testimony at the §341(a) Meeting of Creditors, Debtors knew that this representation was false when the goods were offered as security, as the collateral had either been stolen, was not operable, or was sold prior to the loan requests. Debtors' representation was knowingly false.

Because River Parish required collateral to make these loans, Debtors were also aware that River Parish would rely on their misrepresentation. In fact, the testimony offered by River Parish establishes that but for the offer of this collateral, River Parish would not have advanced funds to Debtors. Therefore, River Parish has established that it relied on the misrepresentation by Debtors.

According to the United States Supreme Court, justifiable reliance on the representation is the appropriate standard to impose and must also be established. <u>Field v. Mans</u>, 116 S.Ct. 437, 444 (1995). In explaining this requirement, the Court instructed that the common law meaning of justifiable reliance, rather than a higher standard of reasonable reliance should be applied. The Supreme Court contrasted justifiable reliance from reasonable reliance by reviewing the Restatement (Second) of Torts (1976) explaining:

> Although the plaintiff's reliance on the misrepresentation must be justifiable...this does not mean that his conduct must conform to the standard of reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.[10]

---

[10] *Id.*

Therefore, while the creditor must satisfy an individual standard based on his capacity and knowledge, the creditor is "required to use his senses" and to perform a cursory glance to ascertain whether any of the facts appear to be apparently false; however, the creditor's burden does not rise to the level of a reasonable person.[11]

In this case, River Parish's reliance was justified because nothing appeared to be false. River Parish had prior business dealings with Mrs. Oubre, without any adverse effect. Not only did Debtors provide descriptions of this property, but also serial numbers for many of the items. Based on the evidence and testimony presented, River Parish justifiably relied upon the misrepresentation made by Debtors.

As a proximate result of the false representations made by Debtors, River Parish suffered a loss, as Debtors' bankruptcy filing portends that its loan will not be repaid. The Court notes that River Parish's loss does not arise from the ability of the lender to seize the collateral, but from the overall reductions of Debtors' patrimony or estate.

At the hearing on the Motion for Default, River Parish advised the Court that the UCC Financing Statement noticing their security interest was not filed until October 13, 2017. Because this is after the Petition Date, River Parish failed to perfect its security interest, and the filing is of no effect.[12]

---

[11] *Id.*

[12] 11 U.S.C. § 544(a)(1), 11 U.S.C. § 547(b)(1)-(5),11 U.S.C. § 547(e)(2), and 11 U.S.C. § 549(a)(1).

River Parish maintains despite this fact that their security interest remains effective between the creditor and the debtor. In their brief, River Parish points to La. R.S. 10:9-203 to support its position. 10:9-203 of the Louisiana Revised Statutes provides in pertinent part:

> (a) Attachment. A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.
>
> (b) Enforceability. Except as otherwise provided in Subsections (c) through (i) of this Section, a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>
>> (1) value has been given;
>>
>> (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>>
>> (3) one of the following conditions is met:
>>
>>> (A) the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers a life insurance policy, the condition specified in R.S. 10:9-107.1(b) is met, and, if the security interest covers timber to be cut, a description of the land concerned...

While the filing the UCC Financing Statement is unnecessary to perfect a security interest between the parties, given Debtors' intervening bankruptcy, the failure to perfect as to third parties makes any claim against the Debtors' practically meaningless.

Because River Parish failed to perfect its security interest in Debtors' property, it can not claim to have lost its collateral due to Debtors' misrepresentations. Nevertheless, if Debtors actually retained the property they offered, it would be available for liquidation or added to the amounts necessary to distribute in order to satisfy confirmation and discharge. This would generally inure to River Parish's benefit in the form of an increased distribution.

Secondarily, without Debtors' false statements, the loans would not have been made in the first instance. For these reasons, River Parish suffered a direct or proximate loss as a result of the

Debtors' misrepresentation.

The Court finds that Debtors made a representation that was knowingly false with the intent and purpose of deceiving River Parish. River Parish justifiably relied upon the representation and suffered a loss as a proximate result of same.

### III. Conclusion

Debtors made a representation regarding collateral available to use as security for a loan with River Parish that was knowingly false with the intention and purpose to deceive River Parish into advancing funds. River Parish justifiably relied upon the representation and suffered a proximate loss as a result of the representations. The Court finds that the debt owed by Debtors to River Parish to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Judgment in accord with this Opinion will be entered.

New Orleans, Louisiana, March 16, 2018.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge